1
2
3
4
5
6
7
8           UNITED STATES DISTRICT COURT

9          SOUTHERN DISTRICT OF CALIFORNIA

10

11 | ANH VAN NGUYEN,                    15cv765 WQH (NLS)

12 | Plaintiff,
                                    **REPORT AND**
13 | v.                              **RECOMMENDATION FOR ORDER:**

14
   | CAROLYN W. COLVIN, Acting         **(1) DENYING PLAINTIFF'S**
15 | Commissioner of Social Security,  **MOTION FOR SUMMARY**
                                    **JUDGMENT [Dkt. No. 14]; and**
16 | Defendant.
17                                    **(2) GRANTING DEFENDANT'S**
                                    **CROSS-MOTION FOR SUMMARY**
18                                    **JUDGMENT [Dkt. No. 15]**

19

20        Plaintiff Anh Van Nguyen brings this action under the Social Security Act, 42

21 U.S.C. § 405(g), seeking judicial review of the decision of the Social Security

22 Administration ("Commissioner" or "Defendant") to deny her claims for disability

23 insurance benefits.  This case was referred for a report and recommendation on the

24 parties' cross motions for summary judgment. *See* 28 U.S.C. § 636(b)(1)(B).  After

25 considering the papers submitted, the administrative record, and the applicable law, the

26 court **RECOMMENDS** that Plaintiff's motion for summary judgment and for reversal

27 and/or remand be **DENIED**, and that Defendant's cross motion for summary judgment be

28 **GRANTED**.

# I.   BACKGROUND

## A. <u>Procedural History.</u>

Nguyen initially applied for social security disability insurance benefits under the Social Security Act on August 19, 2011, and completed that application with an in-person interview on September 2, 2011.  Administrative Record (AR) 98-104; 180-183.  She alleged her disability began on September 21, 2010.  AR 180.

The Social Security Administration denied Nguyen's application initially and on reconsideration.  AR 105, 119.  Administrative Law Judge (ALJ) Gail Reich held a hearing on August 5, 2013.  AR 56-97.  The ALJ issued her decision on October 16, 2013 and found that Nguyen was not disabled.  AR 8-19.  The Appeals Council denied Nguyen's request for review of the ALJ's decision on February 11, 2015, causing the decision to become final.  AR 1-4.

Nguyen filed this complaint for judicial review on April 7, 2015.  She asks the court to reverse the ALJ's decision and award her benefits.  P's MSJ, p.5.  Nguyen also asks this court to admit and consider new evidence from a doctor appointment that occurred after the ALJ issued her decision.  P's MSJ, pp.24-25.

## B. <u>Nguyen's Background.</u>

Nguyen was born on May 7, 1968 in South Vietnam.  AR 180.  She immigrated to the United States in 1991.  AR 362.  At the time of her initial application in August 2011, she said she could not speak or understand English but that she could read and write it.  AR 194.  But this statement conflicts with some notes from doctors.  For example, in a psychiatric evaluation on May 10, 2012, the examining psychiatrist, Dr. Engelhorn, noted that Nguyen "speaks fairly good English."  AR 362.  And on May 29, 2012, Nguyen's treating neurologist, Dr. Grisolia, noted that she "speaks fair English with intact attention, orientation and comprehension."  AR 369.

Nguyen worked as a self-employed manicurist from approximately 2002 to September 2010, and as a newspaper carrier from 2006 to September 2010.  AR 196, 253.  She did not have medical insurance.  AR 370.

### C. Documentary Medical Evidence.

#### 1. September 2010 Hospital Records.

On September 21, 2010, Nguyen got up at 3:00 a.m. to go to the bathroom but had trouble walking because of weakness in her left leg. AR 319. She then took two blood pressure pills and went back to sleep. AR 324. Later that morning she went to her doctor, Dr. Nadine Sidrick, who sent her to the emergency room at Scripps Mercy Hospital. AR 324, 346, 354. Dr. Sidrick noted that Nguyen was "very concerned re [medical] costs." AR 346.

At the hospital Nguyen denied having any chest pain, shortness of breath, headache or neck pain. AR 319-322, 324. She had a CT scan of her head. The results showed she suffered from "cerebrovascular accident" and "lacurnar infarctions," also known as a "stroke." AR 314, 335. There was "no evidence of acute hemorrhage or mass effect." AR 335. She also had a MRI done on September 21, 2010 that confirmed the CT results. AR 333. Her other diagnoses included hypertension for either the last two (AR 326) or 10 (AR 313) years, hyperglycemia (AR 326), obesity (AR 315), and evidence of a "prior cardiac inferior infarcation," or heart attack (AR 314, 326).

Nguyen was discharged from the hospital the next day, September 22, 2010. AR 314. Her "left sided upper and lower extremity weakness improved." AR 314. The discharge doctor noted that she was in stable condition, "is able to perform her ADLs [activities of daily life]," and that she was advised to "exercise, start[ing] with brisk walk[s] three to four times a week." AR 315.

#### 2. Treating Primary Care Physician Dr. Sidrick.

Dr. Sidrick is Nguyen's primary care physician. AR 324. From the time of the stroke to the time of the ALJ hearing, Dr. Sidrick saw Nguyen only two times. AR 354. She first saw her on September 21, 2010, the day of her stroke, and then over 11 months later, on August 29, 2011. AR 345. On August 29 Dr. Sidrick found Nguyen had "poorly controlled diabetes." AR 345. Dr. Sidrick noted under Nguyen's "subjective" complaints that she was "unable to work due to past stroke: memory." AR 356.

Four days after that second appointment with Dr. Sidrick—September 2, 2011—Nguyen completed her application for social security benefits with an in-person interview.  AR 180-183.  On September 28, 2011, Dr. Sidrick wrote a letter to Social Security saying:  "Ms. Nguyen needs regular medical care.  At this time, she is unable to work in any capacity."  AR 345.  On April 4, 2012, Dr. Sidrick wrote another letter to Social Security, stating that she saw Nguyen only two times—September 21, 2010 and August 29, 2010—and that her current condition was unknown.  AR 354.

Nguyen went to see Dr. Sidtrick for a third time only days after her August 5, 2013 hearing before the ALJ.  Dr. Sidrick's conclusion from that visit differed from her conclusion in the September 28, 2011 letter, where she wrote that Nguyen could not work.  In the August 2013 letter, Dr. Sidrick never said that Nguyen was disabled or that she could not work; she gave her only certain limitations for the workday.  AR 297-298.  Specifically, Dr. Sidrick noted that Nguyen can lift or carry up to 10 pounds frequently and up to 24 pounds occasionally.  AR 297, 298.  In an eight-hour work day, Dr. Sidrick said Nguyen could sit for six hours, stand for two hours, and walk for two hours.  AR 298.  She noted some limitations, such as no repetitive movements for her left foot and hand, including no grasping, pulling or pushing, and that Nguyen be restricted from unprotected heights, moving machinery, marked changes in temperature and humidity and driving automotive equipment.  AR 297.  Dr. Sidrick also said that Nguyen suffers from poorly-controlled diabetes and left side weakness due to stroke.  AR 298.

### 3.  Treating Neurologist Dr. Grisolia.

On May 29, 2012, Nguyen saw Dr. Grisolia, a neurologist.  AR 369.  He noted her medical history and a few clinical observations, then said that Nguyen could not perform "activities requiring repetitive use of the hands and the patient's left hemiparesis will disable her from activities requiring frequent walking and standing."  AR 369.  He added that "[t]he disabilities are anticipated to be permanent."  AR 369.  Contrary to Nguyen's assertions in her summary judgment motion, Dr. Grisolia never mentioned that he reviewed or in any way relied on the MRI or CT scan results from Nguyen's September

2010 one-day hospital stay.  AR 369; P's MSJ, pp.8, 10.

Nguyen went to see Dr. Grisolia for only the second time on November 20, 2013, after the ALJ issued her October 13, 2013 decision denying Nguyen benefits.  P's MSJ, Ex. 1.  Dr. Grisolia wrote a note about that visit on December 7, 2013.  P's MSJ, Ex. 1. Nguyen seeks to make Dr. Grisolia's note from that day part of the record.

The December 7 note says that based on his exam, Nguyen still has left-side hemiparesis, or weakness, and had "reduced coordinate and grip strength on the left side."  P's MSJ, Ex. 1.  He notes she also suffers from "cognitive impairment, memory loss, and fatigue," and that "her disability from the stroke is stable and permanent."  P's MSJ, Ex. 1.

### 4.  Examining Neurologist Dr. Schweller.

Nguyen saw Dr. Schweller on May 2, 2012 for a consultative exam. AR 357-359. He noted her social and medical history and then conducted a physical examination. After studying her station and gait, Dr. Schweller noted Nguyen could walk without assistance but had a slight limp on the left.  AR 358.  She scored a 5/5 for strength in the upper and lower extremities.  AR 358.  Her right-hand grip was for 30 pounds and left-hand grip was for 20 pounds.  AR 359.  Based on her medical history and the physical exam, Dr. Schweller found that Nguyen had the following functional capacity:  sit, stand and walk for six out of eight hours in a day; lift 20 pounds occasionally and 10 pounds frequently; no limits in bending, stooping, squatting, kneeling or crawling, or in upper extremity fine or gross manipulation; and she should avoid unprotected heights and exposure to moving machinery.  AR 359.

### 5.  Treating Psychiatrist Dr. Henderson.

Nguyen began to see her treating psychiatrist, Dr. Henderson, in March 2011.  AR 370.  She saw him on an irregular basis until at least August 2013.  AR 370.  Dr. Henderson provided no treatment notes.  He noted that Nguyen suffered from severe depression and post-traumatic stress disorder due to the stroke.  AR 370.  Dr. Henderson concluded that Nguyen "has marked restriction of activities of daily living, marked

difficulties in maintaining social functioning and often deficiencies of concentration, persistence or pace[.]"  AR 372.

### 6. Examining Psychiatrist Dr. Engelhorn.

Dr. Engelhorn examined Nguyen on May 7, 2012, and wrote up his report on her on May 10, 2012.  AR 362-364.  Nguyen reported to Dr. Engelhorn:

> She states that she does not experience depression on a daily basis. … She is fully capable of taking care of her basic needs. She does a variety of household chores including cooking, cleaning and laundry.  She states that she drives a car and regularly attends Catholic church services.  She has a reasonably active social life….She occasionally goes grocery shopping.

AR 363.  After listing out several of his clinical observations, Dr. Engelhorn noted that Nguyen showed no evidence of psychosis, active depression or anxiety.  AR 363.  He found that she could perform simple, repetitive tasks and complex and detailed work.  AR 364.  Dr. Engelhorn noted, "I simply did not see any significant psychiatric disability."  AR 364.

### D. Testimony of State Agency Medical Consultant—Dr. Klein.

Dr. Klein, an internist, testified telephonically at the hearing only in relation to Nguyen's physical condition.  AR 69, 74.  He first summarized Nguyen's impairments in order of their severity as evidenced in her medical records:  stroke in 2010 that caused left-sided weakness; type II diabetes; hypertension; frequent headaches; residual left-sided weakness; bilateral carpal tunnel syndrome; and some cognitive impairments.  AR 69-70.  Dr. Klein noted that she does all of her activities of daily life and that her diabetes and hypertension are under control.  AR 70.

Dr. Klein concluded that Nguyen does have a severe medically determinable impairment but that it does not meet or equal any of the listings in the regulations for a central nervous system stroke because she has no loss of motor function and does not have any speech impairment.  AR 70.  He gave Nguyen a light RFC that includes: ability

to lift 10 to 20 pounds; no limitations on sitting, standing or walking; occasional low stairs and ramps; no ladders, ropes or scaffolds; no limitations on fine motoring or reaching or handling; and avoid exposure to extreme cold and heat, dangerous machinery, and height.  AR 70, 71.

### E. **Nguyen's Testimony at the Hearing.**

Nguyen testified that she takes care of the household, cooks, and does the grocery shopping.  AR 63.  She said she does not drive often or long distances but testified that she drove to the hearing in downtown San Diego from Poway that day, driving for approximately 30 minutes.  AR 64, 66.  She can write checks and walk short distances.  AR 65.  Regarding pain and function, Nguyen testified that she gets tired and dizzy after walking short distances.  AR 65-66.  She said she is tired all the time.  AR 66.

### F. **The ALJ's Decision.**

#### 1. **Evaluating Social Security Disability Claims.**

To qualify for disability benefits under the SSA, an applicant must show that he or she cannot engage in any substantial gainful activity because of a medically determinable physical or mental impairment that has lasted or can be expected to last at least 12 months.  42 U.S.C. §423(d).  The Social Security regulations establish a five-step sequential evaluation for determining whether an applicant is disabled under this standard.  20 C.F.R. § 404.1520(a); *Batson v. Comm'r of the Social Security Admin.*, 359 F.3d 1190, 1194 (9th Cir. 2004).

At step one, the ALJ determines whether the applicant is engaged in substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(I).  At step two, the ALJ determines whether the applicant suffers from a "severe" impairment within the meaning of the regulations.  20 C.F.R. § 404.1520(a)(4)(ii).  If the impairment is severe, the ALJ goes on to step three to decide whether the impairment meets or equals one of the "Listing of Impairments" in the Social Security regulations.  20 C.F.R. § 404.1520(a)(4)(iii).  If it does, the applicant is found disabled, and benefits are awarded.  *Id.*  If the impairment does not meet or equal a Listing, the ALJ goes on to step four to determine whether the applicant retains the

residual functional capacity to perform his or her past relevant work.  20 C.F.R. § 404.1520(a)(4)(iv).  If the applicant cannot perform past relevant work, the ALJ–at step five–must consider whether the applicant can perform any other work that exists in the national economy.  20 C.F.R. § 404.1520(a)(4)(v); *Kennedy v. Colvin*, 738 F.3d 1172, 1175 (9th Cir. 2013); *see Garrison v. Colvin*, 759 F.3d 995, 1010-1011 (9th Cir. 2014) (discussing the sequential process in greater length).

While the applicant carries the burden of proving eligibility at steps one through four, the burden at step five rests on the agency.  *Celaya v. Halter*, 332 F.3d 1177, 1180 (9th Cir. 2003).  Applicants not disqualified at step five are eligible for disability benefits. *Id.*

### 2.  Substance of ALJ Decision.

The ALJ determined that Nguyen satisfied Step 1 of the evaluation.  First, Nguyen met the insured status requirement because her date of last insured was June 30, 2015. AR 13.  Second, she found that Nguyen did not engage in any substantial gainful activity since September 21, 2010, the alleged onset date of her disability.  AR 13.

At Step 2, the ALJ found that Nguyen suffered from the following "severe" impairments as defined in the regulations: left hemiparesis secondary to stroke in 2010; diabetes; obesity; and hypertension.  AR 13.  These impairments caused "significant work-related limitations" for Nguyen.  AR 13.  The ALJ found that Nguyen's carpel tunnel syndrome was non-severe.  AR 13.  Even though the medical evidence did not establish a cause for Nguyen's reported headaches, the medical expert considered them in his opinion.  AR 13.  The ALJ also found that Nguyen's medically determinable mental impairment was non-severe and did not cause more than a minimal limitation on her ability to perform basic mental work activities.  AR 11.

Moving on to Step 3, the ALJ found Nguyen did not suffer from an impairment or combination of impairments that met or medically equaled one of the impairments in the Social Security Regulations listed in 20 C.F.R. 404, Subpart P, Appendix 1.  AR 13-14; *see* 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526.

In determining—at step 4—whether Nguyen retained the residual functional capacity (RFC) to perform her past relevant work, the ALJ found that she could perform light work as defined in 20 C.F.R. § 404.1567(b), with the following limitations:  no more than occasionally climbing ramps and stairs; never climbing ladders, ropes and scaffolds; and must avoid all exposure to temperature extremes, heights and dangerous machinery.  AR 15.  The ALJ relied on the vocational expert's testimony that an individual with Nguyen's RFC could return to her past occupation as a manicurist (sedentary semiskilled work), and that she could perform it as actually and generally performed.  AR 17.

Even though the ALJ found that Nguyen was capable of her past relevant work as a manicurist, she proceeded with the evaluation at step five for considering whether Nguyen could perform any other work existing in the national economy.  AR 17.  The ALJ considered Nguyen's RFC, age, education, work experience in conjunction with the medical-vocational guidelines and testimony of the vocational expert.  AR 17.  Based on these factors, she found that in addition to her past relevant work as a manicurist, Nguyen could also work as a garment folder and a small products assembler.  AR 18.

## II.   DISCUSSION

### A. Legal Standard of Review.

The Social Security Act provides for judicial review of a final agency decision denying a claim for disability benefits.  42 U.S.C. § 405(g).  A reviewing court must affirm the denial of benefits if the agency's decision is supported by substantial evidence and applies the correct legal standards.  *Batson v. Comm'r of the Social Security Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).  Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001) (citation omitted).  Put another way, it is "more than a scintilla but less than a preponderance." *Thomas v. Barnhart,* 278 F.3d 947, 954 (9th Cir. 2002).

/ / /

If the evidence is susceptible to more than one reasonable interpretation, the agency's decision must be upheld. *Id.; Batson*, 359 F.3d at 1193. Further, when medical reports are inconclusive, questions of credibility and resolution of conflicts in the testimony are the exclusive functions of the agency. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). The reviewing court cannot reinterpret or re-evaluate the evidence however much a re-evaluation may reasonably result in a favorable outcome for the plaintiff. *See Batson*, 359 F.3d at 1193.

## B. Assertion of Error.

In challenging the ALJ's denial of benefits, Nguyen argues the ALJ committed reversible error and did not base the decision on substantial evidence. She argues that the ALJ erred by disregarding the opinions of Nguyen's treating physicians, namely Dr. Sidrick, Dr. Grisiola and Dr. Henderson. She also argues the ALJ erred when she interrupted Nguyen's attorney to allegedly prevent the cross-examination of the Agency's medical expert.

## C. Is There Substantial Evidence to Support the Decision?

### 1. Rejection of Treating Physicians' Opinions.

A treating physician's opinion is generally afforded "substantial weight." *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1228 (9th Cir. 2009). But it is not always given controlling weight: "Although a treating physician's opinion is generally afforded the greatest weight in disability cases, it is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability." *Batson*, 359 F.3d at 1194-95 (internal quotations omitted). "The ALJ may disregard the treating physician's opinion whether or not that opinion is contradicted." *Id.* (internal quotations omitted).

To reject a treating physician's opinion, an ALJ must provide specific, legitimate reasons based on substantial evidence in the record. *See Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009); *see also Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995) (requiring an ALJ to give specific, legitimate reasons based

on substantial evidence for rejecting the opinion of a treating physician based in part on the testimony of a non-examining medical advisor); *Magallanes*, 881 F.2d at 752-753. The ALJ can meet this burden "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* at 751-755.  Additionally, when confronted with conflicting medical opinions, an "ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bray*, 554 F.3d at 1228 (internal quotation marks and citation omitted). Finally, the "ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).

### a. Dr. Sidrick—Physical Impairments.

The ALJ did not assign controlling weight to Dr. Sidrick's opinion namely because (1) Dr. Sidrick treated Nguyen on only two occasions (AR 354); (2) her conclusions were brief and based on only one handwritten page of sparse notes in one of the examinations (AR 16; 354); and (3) Dr. Sidrick gave conflicting opinions.  The ALJ also relied on Dr. Klein, the medical expert, who opined that the examination records were insufficient to support any of Dr. Sidrick's conclusions.  AR 16.

First, Dr. Sidrick never obtained a detailed picture of Nguyen's impairment over the relevant time period because she saw Nguyen only two times over an 11-month period.  This is a specific and legitimate reason, based on substantial evidence—or lack thereof—to reject her opinion.  *See* 20 C.F.R. § 404.1527(c)(2) ("the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion").  The two examinations did not provide much more opportunity, if any, than the consulting doctors had in their examinations with Nguyen.

Second, the ALJ found that Dr. Sidrick provided little objective support for her conclusion that Nguyen's impairments were disabling.  The ALJ pointed out there was only a single-page, sparsely-written progress note.  It was reasonable, therefore, for the

ALJ to conclude that Dr. Sidrick's finding of total inability to work was not supported by objective medical evidence.  *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (rejecting opinion of a doctor that is "conclusory and brief and unsupported by clinical findings"); *Bray*, 554 F.3d at 1228 (rejecting a treating physician's conclusory opinion because it was not supported by clinical evidence); *see also* 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion").

Third, the ALJ noted that Dr. Sidrick provided conflicting findings.  AR 16.  For example, in September 2011 Dr. Sidrick wrote a letter stating that Nguyen could not work at all.  But then in August 2013 she filled out a medical assessment—without showing any evidence of another visit or examination—that said Nguyen could do sedentary work.[1]  AR 16.  Dr. Sidrick does not at all explain her change of position.

In addition, the ALJ cited to the opinion of examining neurologist Dr. Schweller, who found that Nguyen was capable of light work.  AR 17.  In his opinion, Dr. Schweller wrote out the seven different physical examinations he conducted, his observations, and his findings.  AR 358.  While he did not review Nguyen's medical record, his opinion constitutes substantial evidence because he based it on his own clinical findings.  *See Tonapetyan*, 242 F.3d at 1149 (finding a consultative examiner's opinion "constitutes substantial evidence, because it rests on his own independent examination").

### i.  *Reliance on Opinion of Dr. Klein.*

Finally, in rejecting Dr. Sidrick's opinion, the ALJ relied on the opinion of Dr. Klein, the testifying medical expert.  AR 16-17.  Dr. Klein based his opinion on his

---

[1] Nguyen tries to argue that the ALJ's decision is flawed due to her "total failure to address Dr. Sidrick's August 20, 2013 evaluation submitted after the hearing."  P's MSJ, pp.9, 17; Reply, p.1.  That is simply wrong.  The ALJ addressed that August 20, 2013 note in her opinion:  "An August 2013 medical source assessment from Dr. Sidrick then opined the claimant was only capable of sedentary work."  AR 16.

complete review of the medical evidence.  AR 70.  He opined that Nguyen could perform light work with certain postural and environmental restrictions.  AR 70.  His opinion, coupled with other evidence in the record, serves as additional substantial evidence to support the ALJ's opinion.  *See Morgan v. Comm'r of Soc. Sec. Admin.,* 169 F.3d 595, 600 (9th Cir. 1999).

The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician."  *Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1995).  A Commissioner's decision to reject the opinion of a treating or examining physician, however, may be upheld where it is based in part on the testimony of a nonexamining medical advisor.  *Id.* (*citing e.g. Magallanes*, 881 F.2d at 751-55; *Andrews,* 53 F.3d at 1043; *Roberts v. Shalala,* 66 F.3d 179 (9th Cir. 1995)).  Where the ALJ does not rely on a nonexamining physician's testimony *alone* to reject the treating physician's opinions, also relies on other evidence in the record to support the ALJ's decision, the rejection of the treating physician's opinion is adequately supported.  *See id.*

Here, the ALJ's decision to not assign controlling weight to Dr. Sidrick's opinions was based only in part on the opinion of Dr. Klein, the non-examining and non-treating medical advisor.  The ALJ did not rely on Dr. Klein's opinion alone as to Nguyen's RFC.  Rather, the ALJ also cited to other evidence in the record, such as the report from the consultative neurologist, Dr. Schweller, which listed out Nguyen's capabilities; and to the medical evidence of the record in general, including Nguyen's testimony, which Dr. Klein considered.  AR 17.  As the ALJ noted, Dr. Klein had the "greatest longitudinal view of [Nguyen]'s condition."  AR 17.  Reliance on Dr. Klein's opinion does not justify reversal.

### ii.  Dr. Klein Is Not a Specialist.

Second, Nguyen argues that Dr. Klein was not qualified to opine on her neurological impairment because he was an internist as opposed to a neurologist.  P's MSJ, p.7.  Nguyen cites to no legal or medical authority to support her claim.

By regulation, the Commissioner "generally give[s] more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist."  20 C.F.R. § 404.1527(c)(5).  But this is only one factor to consider and does not, on its own, justify reversal.  *See, e.g., Garcia v. Colvin*, 2014 U.S. Dist. LEXIS 607, *16 (E.D. Wash. Jan. 3, 2014) (considering whether a doctor is a specialist "is certainly a factor that the ALJ could properly consider in affording less weight to that portion of his opinion.") (*citing* 20 C.F.R. § 404.1527(c)(5)).

### iii.   *ALJ's Interruption of Nguyen's Cross-Examination of Dr. Klein.*

Finally, Nguyen argues that the ALJ interfered with her attorney's cross-examination of Dr. Klein, which prevented her from obtaining favorable testimony from him.  P's MSJ, pp.7, 11-13.  But Nguyen mischaracterizes what actually happened at the hearing.  The ALJ was clarifying Dr. Klein's statements because Nguyen's attorney (1) seemed to misconstrue what Dr. Klein was saying; and (2) did not have a solid grasp of the facts of her own case.

For example, after Dr. Klein explained that he reviewed all the medical records, including the psychiatric records, Nguyen's attorney said:

ATTY:  I thought that he testified that he did not read all of the medical history.

ALJ:  No, he did not say that.

ATTY:  Okay.

AR 73-75.

Dr. Klein also emphasized several times that while he read the psychiatric records, he was not qualified to give an opinion on them, so did not account for them in his opinion or RFC.  Nguyen's attorney, though, had difficulty accepting his testimony, causing the ALJ to have to clarify that point several times:

ATTY:  Just, just to make sure that we have an agreement here.  That, in your assessment, you did not take into account 10F, which is the psychiatric evaluation.  Is that correct?

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ALJ:        All right.  This is the 6th time we've been through that.  Can -- do you
            want to talk about something you haven't covered already?

ATTY:       I just want to make sure, your honor.  Because, with, dealing with 5F
            and 6F and 9F and I just want to make sure that he did not include –

ALJ:        He's not testifying as to – how many ways can I say that to you?

AR 86.

Nguyen's attorney also misunderstood Dr. Klein's testimony about Dr. Sidrick's
examination of Nguyen:

ATTY:       So, there's no basis for your statement that Dr. Sidrick was not
            examining the patient when she made the April, 2012 report. Is that
            correct?

ALJ:        He didn't say she didn't examine the patient.

ATTY:       He say something about Dr. Sidrick not examining –

ALJ:        He said something about that.  He didn't say she didn't examine her.

AR 79.

Finally, Nguyen's attorney did not have a solid grasp of the facts of her case, as
she asked Dr. Klein if he knew whether Nguyen saw Dr. Sidrick more than one time.  AR
79.  The ALJ explained that was not a question to pose to the medical expert.  AR 79.  As
it turns out, even though Nguyen's attorney argued that Dr. Sidrick was the treating
physician, she herself did not know—or have the records to figure out—whether Nguyen
saw Dr. Sidrick more than once:

ALJ:        [Dr. Sidrick is] not a treating physician? Is that correct?  That was just
            someone –

ATTY:       That's the treating physician.

/ / /

| | | |
|---|---|---|
| 1 | ALJ: | Because it says "seen for a disability evaluation."  That doesn't sound |
| 2 | | like a treating physician. …Where are the other records from that |
| 3 | | doctor? |
| 4 | ATTY: | I don't have them. |
| 5 | ALJ: | You don't have them?  Okay.  So, that was the only time the claimant |
| 6 | | saw that doctor? |
| 7 | ATTY: | I don't know, your honor. |
| 8 | ALJ: | Well, the record is – the letter begins "I'm seeing this patient for a |
| 9 | | disability evaluation."  That's not how a treating physician's records |
| 10 | | begin. |
| 11 | ATTY: | It's my understanding that he [*sic*] is a treating physician. |
| 12 | ALJ: | And it's your understand[ing] that the claimant saw that person how |
| 13 | | many times? |
| 14 | ATTY: | And, she might have seen him [*sic*] more than once, your honor. |
| 15 | | *** |
| 16 | ALJ: | Do you have any evidence that the claimant saw [Dr. Sidrick] more |
| 17 | | than once? |
| 18 | ATTY: | I'll speak to the claimant, your honor. |
| 19 | ALJ: | I'm asking you. |
| 20 | ATTY: | I don't have any evidence with me.  I will have to contact the doctor's |
| 21 | | office. |
| 22 | | |

AR 81-82.

        After reviewing the entire transcript, the court finds that in her interjections the

ALJ was merely clarifying questions to Dr. Klein and preventing the repetition of

questions to him.  Further, Dr. Klein appeared by phone, and while it is not specified in

the transcript, it is possible that some of the clarifications were due to his appearance by

phone.  And finally, according to Defendant, it is in the province of the ALJ to take such

actions.  *See* Hearings, Appeals, and Litigation Law Manual (HALLEX), HALLEX I-2-6-70.C (on cross-examination of a medical expert, "the ALJ will determine when [counsel] may exercise this right and whether questions asked or answers given are appropriate.")

In sum, the ALJ provided specific and legitimate reasons based on substantial evidence in the record—including that provided by Dr. Klein—to reject Dr. Sidrick's opinion.

### b.  Dr. Grisiola—Physical Impairments.

In his May 2012 letter, Dr. Grisiola opined that Nguyen could not perform activities requiring repetitive use of her hands or frequent walking or standing.  AR 369. The ALJ gave this opinion little weight because Nguyen had seen Dr. Grisiola only one time, and the medical record did not substantiate his findings that Nguyen suffered from carpal tunnel syndrome.  AR 16.  Nguyen argues that Dr. Grisiola's opinion is entitled to controlling weight because he was a treating physician and because he reviewed and relied on the MRI and CT scan results from the hospital in making his assessment.  P's MSJ, pp.8-10; Reply, p.2.  She also argues that the ALJ erred in rejecting "Dr. Grisiola's opinions or findings because the ALJ did not have the December 7, 2013 report available and erroneously found that Dr. Grisiola was not a treating physician."  P's MSJ, p.8.  In other words, Nguyen argues that the ALJ's opinion is "wrong" because it did not consider her second visit to Dr. Grisiola, which occurred almost four months *after* the hearing and over a month *after* the ALJ's decision came out.  Nguyen asks that this court consider that new evidence.

First, the fact that, at the times of the hearing and of the written opinion, Nguyen had seen Dr. Grisiola only one time did not entitle his opinion to any more deference than the opinion of any other consultative medical source, so the ALJ did not err in citing that as a reason to reject his opinion.  *See* 20 C.F.R. § 404.1527(c)(2) (entitling treating physician opinions to more deference because they "provide a detailed longitudinal picture of … medical impairment(s)" as opposed to "reports of individual examinations,

17

such as consultative examinations or brief hospitalizations"). Second, Dr. Grisiola's conclusion that Nguyen could not engage in repetitive use of both of her hands was based on his finding of carpal tunnel syndrome; he said that the left-sided weakness only kept her from frequent walking or standing. AR 369. But there was no other mention in the record of carpal tunnel or weakness in both hands. Because there were no clinical findings to support that conclusion, the ALJ did not err in rejecting Dr. Grisiola's opinion on that basis. *See Bray*, 554 F.3d at 1228 (rejecting a treating physician's conclusory opinion because it was not supported by clinical evidence).

The court finds the single visit to Dr. Grisiola and the lack of supporting clinical evidence to be specific and legitimate reasons to not give Dr. Grisiola's opinion controlling weight. And, contrary to Nguyen's argument, there is no mention that Dr. Grisioloa reviewed or in any way relied on the MRI or CT scan results. AR 369. Finally, as previously explained, the ALJ cited to the opinion of examining neurologist Dr. Schweller, who saw Nguyen just as much as Dr. Grisiola did. Dr. Schweller provided a much more detailed review and assessment than Dr. Grisiola, as he listed out the seven different physical examinations he conducted, his observations, and his findings. AR 358. His opinion constitutes substantial evidence because he based it on his own clinical findings. *See Tonapetyan*, 242 F.3d at 1149 (finding a consultative examiner's opinion "constitutes substantial evidence, because it rests on his own independent examination").

### i. *Proposed Introduction of New Evidence from Dr. Grisiola.*

Nguyen asks the court to admit and consider evidence of her second appointment with Dr. Grisiola dated in December 2013, nearly two months after the ALJ issued her opinion. A court can order new evidence to be considered by the Commissioner if it "is material and that there is good cause for the failure to incorporate such evidence in a prior proceeding." Evidence is material if "there is a *reasonable possibility* that the new evidence would have changed the outcome of the Secretary's determination[.]" *Booz v. Secretary of Health and Human Services*, 734 F.2d 1378, 1380-81 (9th Cir. 1984) (emphasis in original).

1    Nguyen argues the evidence is material and had it been considered by the ALJ,

2    there is a reasonable probability it would have changed the outcome.  She also argues

3    there is good cause for why it was not available any earlier because Nguyen did not have

4    the funds to seek additional medical treatment.  P's MSJ, p.25.

5    ### ii.  Evidence of December 7, 2013 Medical Exam.

6    The new evidence from Dr. Grisiola consists of a short letter summarizing a

7    medical visit on November 20, 2013.  The letter first summarizes Nguyen's subjective

8    complaints.  P's MSJ, Ex. 1.  The entire results of Dr. Grisiola's neurologic exam are

9    contained in one sentence:  "Neurologic examination discloses a continued presence of a

10   left hemiparesis with reduced coordination and grip strength on the left side."  P's MSJ,

11   Ex. 1.  Based solely on that single finding, Dr. Grisiola concludes that Nguyen is

12   "substantially disabled by her stroke with left hemiparesis, cognitive impairment,

13   memory loss and fatigue."  P's MSJ, Ex. 1.  There are no other treatment notes or

14   observations to lend any support for his broad conclusions.

15   First, this court finds there is no reasonable possibility that this letter would have

16   changed the outcome of the determination, as there is no evidence cited to support Dr.

17   Grisiola's conclusions or cognitive impairment, memory loss or fatigue.  *See Bray*, 554

18   F.3d at 1228 (rejecting a treating physician's conclusory opinion because it was not

19   supported by clinical evidence).  Second, the court has no factual basis on which to find

20   any good cause, based on financial difficulties, to belatedly admit the evidence, as there

21   is no objective evidence of financial distress.  There is also no explanation of how that

22   alleged financial situation quickly changed after the ALJ opinion came out, which

23   allowed Nguyen to go to the doctor.  The court, therefore, denies the request to admit this

24   exhibit into evidence in this case or to remand this case for the Commissioner to consider

25   it.

26   ### c.  Dr. Harry Henderson—Mental Impairments.

27   The ALJ rejected the opinion of Dr. Henderson because (1) he based his opinion

28   on Nguyen's physical impairments as opposed to her depression; (2) there were no

treating records submitted to support his findings; and (3) his findings were inconsistent with those of Dr. Engelhorn.  AR 13.  In his August 5, 2013 report, Dr. Henderson said he saw Nguyen on an irregular basis since 2011 due to her lack of medical insurance.  AR 370.  He said her "depression and posttraumatic stress syndrome result[ed] from the side effects of stroke."  AR 371.  He concluded she had major, recurrent depression and that she "has marked restriction of activities of daily living, marked difficulties in maintaining social functioning and often deficiencies of concentration[.]  AR 371, 372.

The Commissioner does not address the ALJ's reasoning that Dr. Henderson based his opinion on Nguyen's physical impairments as opposed to her mental ones.  Nguyen argues that Dr. Henderson did base his opinions on her mental health, as he conducted a mental status examination and found that psychiatric care was not helping her.  AR 362.  Without any other reasoning provided by the ALJ, or any argument provided by the Commissioner, the court does not find the alleged reliance on only physical impairments to be a specific and legitimate basis to reject Dr. Henderson's opinion.

Second, the ALJ explains that no treatment notes supported Dr. Henderson's findings.  It was not clear to the ALJ, therefore, whether Dr. Henderson's findings were based on Nguyen's subjective complaints or on his clinical findings.  Such a determination directly impacts how much weight is afforded to a treating physician's opinions.  *See* 20 C.F.R. § 404.1527(c)(3) ("the more a medical source presents … medical signs and laboratory findings, the more weight we will give that opinion"); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) (discounting an opinion based on a plaintiff's subjective complaints where those complaints are properly discounted).

Nguyen blames the ALJ for not obtaining Dr. Henderson's treatment records herself.  P's MSJ, pp.15-16.  She argues that under 20 C.F.R. 404.1519a(b)(4), this duty fell on the ALJ.  The court disagrees.  The code section that Nguyen relies on says that an ALJ can order a *consultative examination* where the evidence is inconsistent or insufficient to determine a claim.  Further, the burden was on Nguyen to provide medical

evidence from her own treating doctors.  *See* 20 C.F.R. § 404.1512(c) ("You must provide medical evidence showing that you have an impairment(s) and how severe it is during the time you say that you are disabled"); *Mayes v. Massanari*, 276 F.3d 453, 459-460 (9th Cir. 2001) (finding duty is on the claimant to prove disability and that "[a]n ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence").  While the Commissioner can help a claimant get the medical reports, there is no evidence here that Nguyen asked for help or gave the ALJ permission, as required, to request the reports.  *See* 20 C.F.R. § 404.1512(d) ("We will make every reasonable effort to help you get medical reports from your own medical sources when you give us permission to request the reports").

The court finds that Nguyen did not fulfill her burden in obtaining any treatment notes from Dr. Henderson or in asking the Commissioner to obtain those notes.  The lack of treatment notes to support Dr. Henderson's opinion is a specific and legitimate reason to justify rejecting his opinion.

Finally, Dr. Henderson's opinion was inconsistent with that of Dr. Engelhorn, a consultative psychiatrist.  In his opinion, Dr. Engelhorn reviewed and cited Nguyen's personal history, employment history, medical history and psychiatric history.  AR 362-363.  He then listed out the extensive results of a mental status examination.  AR 363-364.  Some of those clinical findings include:

> She is adequately dressed and groomed …Her speech is normal … She is noted to smile and laugh appropriately at several occasions …She appears to make an honest presentation.  She is an adequate historian. … Concentration and attention were adequate as judged by accurate and rapid responses to serial sevens.

AR 363.

Dr. Engelhorn also noted that Nguyen "is fully capable of taking care of her basic needs.  She does a variety of household chores including cooking, cleaning and laundry.

She stated she drives a car and regularly attends Catholic church services.  She has a reasonably active social life."  AR 363.  These observations echo Nguyen's own testimony at the hearing, where she said she took care of herself, cooked for the family, did household chores and drove.  AR 63-66.  The court finds that because there were no clinical findings to support Dr. Henderson's conclusion, and because Nguyen's own testimony echoed the findings noted in Dr. Engelhorn's report that contradicted the one from Dr. Henderson, the ALJ did not err in rejecting Dr. Henderson's opinion.  *See Rollins*, 261 F.3d at 856 (rejecting a treating physician's assessment of limitations where the notes regarding the plaintiff's capabilities contradict the findings).

## 2.  Nguyen's Allegations of Disabling Pain and Dysfunction.

The ALJ did not find Nguyen's allegations of disabling pain and dysfunction credible.  AR 15.  To discount allegations of pain and dysfunction, an ALJ must provide specific and clear findings to explain the weight given to the claimant's testimony.  *See* Social Security Ruling 96-7p (credibility findings "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements"); *Bunnell v. Sullivan*, 947 F.2d 341, 345-346 (9th Cir. 1991) (en banc) (ALJ cannot "arbitrarily discredit a claimant's testimony regarding pain" (internal quotations omitted)).  Nguyen argues that the ALJ did not provide clear and convincing reasons to discredit her testimony.  P's MSJ, pp.16-20.

In discrediting Nguyen's allegations of pain and dysfunction, the ALJ first noted inconsistencies between Nguyen's testimony and the objective medical evidence.  The medical evidence showed that Nguyen suffered a stroke that caused left-side weakness and that she has a history of obesity, diabetes and hypertension.  AR 15.  But she found the objective findings in the record were inconsistent with Nguyen's statements concerning the intensity, persistence, and limiting effects of her symptoms.  AR 15.  For example, the hospital record from the day after her stroke noted that Nguyen's left-side weakness was "rapidly improving" over her one-day stay in the hospital.  AR 15-16.  A consultative neurologist examination in May 2012 showed that Nguyen's stroke was

likely due to hypertension and that Nguyen had no other injuries to her head, neck, back or extremities.  AR 16.  At most, this medical evidence showed that Nguyen suffered from a stroke in September 2010.[2]  The ALJ did not err in finding that Nguyen's testimony did not corroborate her allegations of disabling pain and dysfunction.  *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis").

Second, Nguyen reported to Dr. Engelhorn that she took care of all her basic needs, did various household chores like cooking, cleaning and laundry, and drove.  AR 16.  She also attends church services regularly and "leads a reasonably active social life."  AR 16.  Nguyen also testified to these facts at the hearing.  AR 63-66.  The ALJ noted that these daily activities are not consistent with Nguyen's complaints of disabling symptoms and limitations and that they are "generally consistent with the limitations" noted here: no more than occasionally climbing ramps and stairs; never climbing ladders, ropes and scaffolds; and must avoid all exposure to temperature extremes, heights and dangerous machinery.  AR 15, 16.  The court finds that the ALJ did not err in her finding.  *See Valentine.*, 574 F.3d at 693 (finding that the ALJ properly considered a claimant's activities in rejecting his credibility because it showed the claimant had greater functional capacity that he acknowledged in written statements and testimony).

Finally, the ALJ found that Nguyen's accounts of disabling pain and dysfunction did not correspond with the course of medical treatment in this case, which consisted of three doctor visits for physical impairments in a three-year period, accompanied by only a single-page sparsely-written progress note.  AR 16.  In comparison to the number of consultative exams done, "there is a notable paucity of actual, consistent treatment for the

---

[2] While Nguyen had consistent reports of diabetes and hypertension, the ALJ noted that they "greatly preceded her cessation of work."  AR 16 (hypertension in 2000 and gestational diabetes for her pregnancy approximately nine years before the stroke).

claimant's hemiparesis or other impairments."  AR 16.  The court finds that the ALJ's

finding is reasonable here.  *See Fair v. Bowen*, 885 F.2d 597 (9th Cir. 1989) (finding

unexplained failure to seek treatment can cast doubt on sincerity of claimant's

testimony); *Stanistreet v. Chater*, 21 F.Supp.2d 1129, 1136 (C.D. Cal. 1995) (finding the

absence of medical treatment over a nine-month period suggested the claimant's

"subjective complaints of worsening symptoms and chronic, disabling pain are

exaggerated").  Further, contrary to Nguyen's argument, there is no evidence that her

alleged lack of medical insurance prevented her from seeing doctors.  First, she did not

testify that she lacked insurance and her counsel never raised the issue at the hearing.  AR

56-97.  Second, she did see Dr. Henderson on a more frequent basis than she saw any

other doctor.  *See* AR 370 (Dr. Henderson noted that Nguyen did not have medical

insurance but he was also the doctor that she saw the most frequently).

     In sum, the ALJ showed specific and clear reasons for discounting Nguyen's

statements regarding her disabling pain and dysfunction.

### 3.  Whether Nguyen Had Past Relevant Work as a Manicurist.[3]

     A claimant's prior work qualifies at past relevant work if it "was done within the

last 15 years, lasted long enough for [the claimant] to learn to do it, and was substantial

gainful activity."  20 C.F.R. § 416.965(a).  Here, the ALJ found that Nguyen could

perform her past relevant work as a manicurist.  AR 17.  But Nguyen argues that she did

not have past relevant work as a manicurist.  Specifically, she argues it was not a

substantial gainful activity for her because (1) she did not earn more than the required

amount of money to presume it was a substantial gainful activity; and (2) as a matter of

---

[3] In her argument regarding "substantial gainful activity" Nguyen repeats that the record "clearly establishes" that she is not fluent in English.  P's MSJ, pp.23-24; Reply, pp.8-9. First, the court disagrees that the fact is "clearly established" in the record because Dr. Engelhorn noted that she "speaks fairly good English" (AR 362) and Nguyen's treating neurologist, Dr. Grisolia, noted that she "speaks fair English" (AR 369).  Second, Nguyen does not show how her English abilities, or lack thereof, affected her substantial gainful activity as a manicurist.

law, part-time employment is not substantial gainful activity.  P's MSJ, pp.20-23.  The Commissioner argues that Nguyen's argument is "at odds with her work history report and earnings record."  Opp'n, pp.13-15.

First, the Social Security Administration established threshold amounts of minimum monthly income to show substantial gainful activity (SGA).  *See* Program Operations Manual System, Disability Insurance § 10501.015B (*available at* https://secure.ssa.gov/apps10/poms.nsf/lnx/0410501015) (last visited Feb. 1, 2016).  Compared to the earnings record provided in the administrative record, Nguyen surpassed the threshold amounts for substantial gainful activity for at least three years:

- 2003: SGA=$800; Nguyen=$10,954 yearly, or $913/monthly (AR 187)
- 2005: SGA=$830; Nguyen=$13,696 yearly, or $1141/monthly (AR 187)
- 2008: SGA=$940; Nguyen=$12,341 yearly, or $1028/monthly (AR 188)

Second, contrary to Nguyen's argument, part-time work can constitute substantial gainful activity.  In relying on *Gatliff v. Comm'r of Soc. Sec. Admin.*, 172 F.3d 690, 694 (9th Cir. 1999), Nguyen argues that "part-time employment is not 'substantial gainful activity'" as a matter of law.  P's MSJ, p.22.  But *Gatliff* does not stand for that proposition.  In *Gatliff*, the claimant worked full time but had an issue with long-term employment as he could not hold a job for longer than two months.  172 F.3d at 692-693.  Here, Nguyen did not have a problem with short-term work, because she worked for many years in two different jobs.  She worked as a manicurist from 2002 to 2010 and as a newspaper carrier from 2006 to 2010.  AR 196, 253.  Thus, *Gatliff* does not apply to this case.

The court finds that Nguyen engaged in substantial gainful activity as a manicurist, and thus has past relevant work experience as a manicurist.

/ / /

/ / /

/ / /

## III.    CONCLUSION

The court finds that the ALJ's decision to deny Nguyen benefits is supported by substantial evidence.  Accordingly, the Court **RECOMMENDS** that Plaintiff's motion for summary judgment be **DENIED** and that Defendant's cross motion for summary judgment be **GRANTED**.

This Report and Recommendation is submitted to the United States district judge assigned to this case pursuant to 28 U.S.C. § 636(b)(1).  Any party may file written objections with the court and serve a copy on all parties on or before **February 17, 2016**.  The document should be captioned "Objections to Report and Recommendation."

Any response to the objections shall be filed and served on or before **February 24, 2016**.   The parties are advised that any failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order.  *Baxter v. Sullivan,* 923 F.2d 1391, 1394 (9th Cir. 1991).

**IT IS SO ORDERED.**

Dated:  February 2, 2016

Hon. Nita L. Stormes
United States Magistrate Judge

y